UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

KIM HARLENE GREENE,
           Plaintiff,

v.                                           Case # 1:18-CV-137-DB

COMMISSIONER OF SOCIAL SECURITY,      MEMORANDUM DECISION AND ORDER
           Defendant.

## INTRODUCTION

Plaintiff Kim Harlene Greene ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act") seeking review of the final decision of the Commissioner of Social Security (the "Commissioner") that denied her application for Disability Insurance Benefits ("DIB") under Title II of the Act, and her application for supplemental security income ("SSI") under Title XVI of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned, in accordance with a standing order (*see* ECF. No. 10).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 8, 11. For the reasons set forth below, the Commissioner's motion (ECF No. 11) is **DENIED**, and Plaintiff's motion (ECF No. 8) is **GRANTED IN PART**, and this matter is **REMANDED** to the Commissioner for further administrative proceedings as set forth below.

## BACKGROUND

On May 15, 2014, Plaintiff filed an application for disability benefits under Title II, alleging disability beginning October 1, 2013 (the disability onset date). ECF No. 6, Transcript (Tr.) 10. Plaintiff alleges she is disabled due to asthma, degenerative disc disease, sciatica,

tendonitis, high blood pressure, and depression. Tr. 162. Plaintiff's application was denied initially on July 2, 2014 (Tr. 10), after which she requested a hearing. Plaintiff's hearing was held before Administrative Law Judge William M. Weir (the "ALJ") on June 20, 2016. Plaintiff appeared and testified at the hearing and was represented by counsel. Tr. 36-73. Rachel A. Duchon, a vocational expert ("VE"), also appeared and testified at the hearing. *Id*. The ALJ issued an unfavorable decision on October 26, 2016 (Tr. 7-26), finding that Plaintiff was not disabled under sections 216(i) and 223(d) of the Act. On November 29, 2017, the Appeals Council denied Plaintiff's request for further review. Tr. 1-6. The ALJ's decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

Plaintiff was born on April 9, 1963, was fifty years old on the alleged disability onset date (Tr. 21), and fifty-three at the time of the hearing (Tr. 43). Plaintiff has a high school diploma with a few years of college education. Tr. 21, 43-44. She previously worked as a security guard. (Tr. 21).

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations

omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

## II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id.* § 404.1509. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id.* § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. Id. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the

Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

The ALJ analyzed Plaintiff's claim for benefits under the process described above. At the first step of the sequential evaluation, the ALJ determined that Plaintiff met the insured status requirements of the Act through December 31, 2019, and she had not engaged in substantial gainful activity since October 1, 2013, the alleged onset date of disability. Tr. 12. At step 2, the ALJ found that Plaintiff had the following severe impairments: obesity and lumbar degenerative disc disease. Tr. 13-15. However, the ALJ found Plaintiff's conditions of hypertension, type II diabetes mellitus, asthma, pulmonary embolism, and depression to be non-severe. Tr. 13-15. At step 3, the ALJ found that none of Plaintiff's severe impairments met or medically equaled the severity of an impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 13.

Prior to proceeding to step four, the ALJ formulated Plaintiff's residual functional capacity ("RFC"), or the most she could still do despite her impairments, 20 C.F.R. § 404.1545. The ALJ determined that Plaintiff had the RFC to "lift and carry 15 pounds with occasional bending but no crawling, stooping or squatting. The claimant further requires the ability to sit or stand at will (defined as every 20 minutes), but she is able to maintain station and performance." Tr. 15-20. Based on the RFC assessed, the ALJ determined at step four that Plaintiff could not perform her past relevant work as a security guard. Tr. 21. Then, based on the VE's assessment and Plaintiff's

4

testimony at the hearing, as well as Plaintiff's age, education, and work experience, the ALJ found other jobs existed in the national economy that Plaintiff could perform, such as parking lot attendant or ticket taker. Tr. 22. Thus, the ALJ concluded that Plaintiff had not been under a disability since the application was filed through the date of his decision. Tr. 22.

## II. Analysis

Plaintiff argues the ALJ improperly gave "little weight" to the treating medical source statement opinion of Philip Penepent, Jr., M.D. ("Dr. Penepent"), despite Dr. Penepent being Plaintiff's primary treating source. *See* ECF No. 8-1 at 19-21. Additionally, Plaintiff argues the ALJ failed in his affirmative duty to supplement the record in light of missing and/or inconsistent information in the treatment records, and as a result, failed to properly evaluate Dr. Penepent's opinion. *Id*. at 21. Plaintiff also argues the ALJ failed in his duty to develop the record because he did not obtain treatment records from Plaintiff's physical therapist or from her overnight psychiatric hospital stay, and in so doing, the ALJ failed to appropriately consider all of Plaintiff's impairments and restrictions in the RFC finding. *Id*. at 27-28.

### A. The ALJ Appropriately Assigned Dr. Penepent's Opinion Little Weight.

Although the Court is remanding this case on the narrow grounds set forth below, the Court deems it appropriate to address whether there is any need to have Dr. Penepent's opinion clarified. Based on the evidence before the Court, the Court finds that the ALJ appropriately assigned little weight to the medical source statement completed by Dr. Penepent on June 3, 2014 (Tr. 326-28), noting, among other things, that it was inconsistent with Plaintiff's treatment visits on February 2, 2015, and June 14, 2016. Tr. 19. The ALJ also noted that Dr. Penepent's statement pre-dated a functional capacity assessment by Plaintiff's neurosurgeon Dr. Michael Landi, M.D. ("Dr. Landi"), who released Plaintiff to return to light duty work. Tr. 278. For similar reasons, the ALJ

5

gave little weight to the questionnaire completed by Dr. Penepent's associate, Audrey Smith, PA-C ("Ms. Smith"), who opined that Plaintiff was permanently disabled from her present work with no foreseeable possibility of returning. Tr. 354. Plaintiff argues that to the extent the ALJ had any concerns about inconsistencies in Dr. Penepent's records and how such inconsistencies impacted his treating medical source statement, the ALJ should have contacted Dr. Penepent for further clarification. *See* ECF No. 8-1 at 21-22, 27. The Court disagrees for several reasons.

First, the hearing transcript establishes that the ALJ realized that Plaintiff's counsel had not properly supplemented the record, which was missing over one year of Dr. Pentepent's treatment records. Tr. 40. Plaintiff's attorney explained that she was trying to obtain additional records from Dr. Penepent, and the ALJ allowed additional time to submit those records. Tr. 40-41. The hearing transcript also establishes that Plaintiff's counsel recognized the contradictions in Dr. Penepent's records. Tr. 42. Second, the Court finds that Dr. Penepent's treatment records are contradictory throughout. Thus, this begs the question of whether, as Plaintiff argues, the ALJ is required to seek further information from the Dr. Penepent. For eight months beginning in October 2013, Dr. Penepent released Plaintiff either to return to work with no restrictions or limited restrictions after her pulmonary embolism. Yet, his report in June 2014 states that her symptoms and limitations preventing her from doing any meaningful tasks began in June 2013. Tr. 328. Similarly, Ms. Smith submitted a form to the State Retirement System stating that Plaintiff's disability began on October 29, 2014 (Tr. 354), which was inconsistent with the June 2014 statement (Tr. 328), as well as contrary to the alleged disability onset date of October 1, 2012. Tr. 19.

In October 2013, Dr. Penepent stated that Plaintiff could return to work without restrictions. Tr. 261. A subsequent treatment note in January 2014 states she could return to work

with the following restrictions through May 1, 2014: no heavy lifting, repetitive bending, twisting pushing or pulling-no prolonged standing and she should be offered frequent periods of sitting. Tr. 250. On May 27, 2014, the notes reflect that Plaintiff tried to go to work on May 1, 2014, but she "was denied going to back to work because she would have difficulty walking all day as a parking enforcement officer." Tr. 239. The note goes on to state that Plaintiff "now wishes to pursue social security disability." *Id*. On that date, a work note follows that Plaintiff is disabled for all occupations due to chronic back pain secondary to spinal stenosis, morbid obesity and recent pulmonary embolism. Tr. 241. Shortly thereafter, on June 3, 2014 (Tr. 326-28), there is a form submitted on the letterhead of Dr. Penepent; however, the signature or signatures are illegible. *Id*. The note states Plaintiff cannot, or is extremely limited, in performing any meaningful tasks. *Id*. As these examples demonstrate, this is not just a matter of inconsistencies in the record, but rather, Dr. Penepent's records are replete with blatant contradictions giving credence to the ALJ's determination of little weight.

As noted herein, although Plaintiff complains of lower back pain, the records most commonly note no musculoskeletal disorders. Plaintiff had a history of lumbar disc disease and obesity, which prevented her from working at her prior job as a parking enforcement officer (Tr. 43, 45-46, 248, 262, 265, 271, 272, 280, 285, 298, 314, 321, 342), but overall, her medical providers observed—and Plaintiff often agreed—that Plaintiff had no shortness of breath, no wheezing, no joint swelling or pain, no memory loss, no calf tenderness, and no musculoskeletal deformity; she also had a full range of motion, intact memory and judgment, and a normal gait. Tr. 240, 244, 248, 256, 260, 262, 265-266, 271, 282, 294, 300-302, 304, 306, 309-311, 314, 318, 320, 337-338, 340, 342, 346. Her doctors on three occasions released Plaintiff back for work. Tr. 245, 250, 261.

The opinion of Plaintiff's treating physician should be given "controlling weight" if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record," 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). However, a treating physician's opinion is not afforded controlling weight when the opinion is inconsistent with other substantial evidence in the record, such as the opinions of other medical experts. 20 C.F.R. § 404.1527(d)(2); *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999). If the ALJ gives the treating physician's opinion less than controlling weight, he must provide good reasons for doing so. *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998).

If not afforded controlling weight, a treating physician's opinion is given weight according to a non-exhaustive list of enumerated factors, including (i) the frequency of examinations and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the physician's opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the physician has a relevant specialty. 20 C.F.R. §§ 404.1527(c) (2), 416.927(c)(2); *see Clark*, 143 F.3d at 118; *Marquez v. Colvin*, No. 12 CIV. 6819 PKC, 2013 WL 5568718, at *9 (S.D.N.Y. Oct. 9, 2013). In rejecting a treating physician's opinion, an ALJ need not expressly enumerate each factor considered if the ALJ's reasoning and adherence to the treating physician rule is clear. *See, e.g., Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013). In this case, the ALJ thoroughly discussed the relevant factors provided in 20 C.F.R. § 404.1527(c). Specifically, the ALJ discussed Plaintiff's treatment relationship with Dr. Penepent, the lack of objective evidence in support of Dr. Penepent's opinion, and the numerous contradictions within Dr. Penepent's own records, as well as the inconsistency of Dr. Penepent's opinion with other substantial evidence in the record.

The June 2014 note from Dr. Penepent's office states that Plaintiff had been referred to a neurosurgeon. The record indicates that Plaintiff was treated Dr. Landi, a neurosurgical specialist.

Tr. 277-84. The ALJ gave Dr. Landi's opinion significant weight, noting that Dr. Landi examined Plaintiff on numerous occasions, and his objective findings were mostly negative, as well as consistent with other evidence in the record. Tr. 19-20. Plaintiff saw Dr. Landi over an approximately one-year period from October 2013 to September 2014. Tr. 277-84. At the last visit in September 2014, Dr. Landi noted that the MRIs (which were not included in the record) reflect L4-5 spondylolisthesis that is very unstable on flexion or extension. Tr. 284. However, he also commented that Plaintiff could return to light work duty. He noted that the functional capacity evaluation restricted her lifting to 15 pounds and she was to avoid frequent bending and lifting. Tr. 278-79.

The ALJ appropriately gave great weight to the opinion of Dr. Landi, *See Petrie v. Astrue*, 412 F. App'x 401, 407–08 (2d Cir. 2011) (citing 20 C.F.R. §§ 404.1527(d)(5), 416.927(d)(5)) ("The regulations provide that an opinion of a specialist regarding medical issues related to his or her area of specialty must be given more weight than the opinion of a source who is not a specialist."). This was especially true in light of the numerous contradictions in Dr. Penepent's records noted above. In sum, the ALJ gave proper consideration to all relevant factors and determined that Dr. Landi's opinion was entitled to greater weight than the opinions of Dr. Penepent and his associate, Ms. Smith, and appropriately incorporated Dr. Landi's findings into the RFC determination. Accordingly, the Court finds no error and further finds that the ALJ need not contact Dr. Penepent to re-assess the weight assigned to his opinion.

**B. The ALJ Should Fully Develop The Record.**

As discussed above, at the administrative hearing, the ALJ noted nearly a year of missing records from Dr. Penepent. Tr. 40. At the end of the hearing, the ALJ stated: "I will look for a lot of other evidence, including the – as we said, nearly a year of missing records, and the MRI, and

9

a whole bunch of other things I wasn't able to find in the record." Tr. 72. Plaintiff also argues the ALJ failed in his duty to develop the record because Plaintiff's physical therapy treatment records were "clearly" missing, as well as a psychiatric hospitalization was also missing. *Id.* at 27.

The Commissioner argues in response that insofar as Plaintiff's counsel stated that she would try to find a statement from the doctor, the burden to provide the additional statements was on Plaintiff, not the ALJ. *See* ECF No. 11-at 23 (citing *Jordan v. Comm'r of Soc. Sec.*, 142 F. App'x 542, 543 (2d Cir. Sept. 8, 2005) (holding that the ALJ did not err in failing to contact or obtain doctor records where counsel volunteered to obtain records and ALJ kept record open to allow counsel to do so)). The Commissioner further argues that any missing evidence notwithstanding, the record on the whole was sufficient to allow the ALJ to assess Plaintiff's RFC. *See* ECF No. 11-1 at 23. The Court finds the Commissioner's argument unpersuasive with respect to the ALJ's affirmative duty to develop the record.

Without dispute, the ALJ has an obligation to develop the record in light of the non-adversarial nature of the benefits proceedings regardless of whether claimant is represented by counsel. *Shaw v. Chater*, 221 F3d 126,131(2nd Cir. 2000). The ALJ decision explains that the record was held open to allow Plaintiff's counsel the opportunity to submit additional medical evidence, and then goes on to state that "such additional evidence has been received, entered into the record and was considered in reaching this decision, [and] [t]he record is now complete." Tr. 10. The additional evidence received included additional records from Dr. Penepent (Tr. 335-55) and records from Plaintiff's treating chiropractor Kenneth Munroe, D.C. ("Dr. Munroe") (Tr. 329-34). The additional records from Dr. Penepent totaled 21 pages, and Dr. Munroe's records totaled 6 pages. Neither set of records includes any objective findings, such as the MRI mentioned in the hearing, nor do these sparse additional pages amount to the "whole bunch of other things" the ALJ

10

stated he was seeking. Tr. 72. Furthermore, nothing in the ALJ's decision explains how the ALJ concluded "the record was complete," to what extent, if any, the ALJ attempted to request additional records from Plaintiff's treating sources, and whether there had been any contact with Plaintiff's counsel to confirm that the record was indeed complete.

The Commissioner primarily cites *Jordan v. Comm'r of Soc. Sec.*, 142 F. App'x 542, 543 (2d Cir. 2005) for the proposition that the ALJ in this case fulfilled his duty to develop the administrative record. ECF. No. 11-1 at 23. In *Jordan*, the ALJ failed to contact or obtain records from, a treating physician whom plaintiff mentioned at his hearing, but: (1) plaintiff's counsel volunteered to secure physician's records; (2) the ALJ kept the record open to allow counsel to do secure the missing records, and later contacted counsel to remind him that no evidence had been received and that a decision would be made on the existing record unless such evidence was timely submitted; (3) counsel subsequently contacted the Social Security Administration to advise it that Jordan had "nothing further to add" to the record; and (4) plaintiff did not request the ALJ's assistance in contacting or securing evidence from the treating physician. *Jordan*, 142 F. App'x at 543. Under those circumstances, the court concluded "we cannot say that the ALJ failed to discharge his duty to develop the record." *Id*.

In the present case, it is not at all clear that the ALJ was advised there was nothing further to add to the record. It is also not clear what, if any, effort was made by the ALJ to supplement or clarify the record having been apprised that other records existed. In *Carr v. Comm'r of Soc. Sec.*, 2017 WL 1957044, at *10 (S.D.N.Y. May 11, 2017), a case distinguishing *Jordan*, the ALJ relied in part on missing documents to devalue treating source opinions, relied on counsel to provide the records, and then failed to reach out to the treating sources for clarification and additional evidence, which the court found was insufficient. Similarly, the ALJ here did not sufficiently develop the

record. As the court noted in *Carr*, the ALJ's duty to develop the record "[s]ometimes [] will require more than keeping the record open and following-up with counsel." *Carr*, 2017 WL 1957044, at *10; *see also Glast v. Astrue*, No. 11 CV 5814, 2013 WL 5532696, at *10 (E.D.N.Y. Sept. 30, 2013) (finding that the ALJ was not relieved of his duty to fully develop the record just because he did not receive treating source information requested from Plaintiff's attorney). In the present case, it is not even clear that the ALJ followed up with counsel at all.

Plaintiff only speculates as to what value these documents would add to the analysis, such as whether the physical therapy records would have provided more physical findings and objective testing. *See* ECF No. 8-1 at 29. Nevertheless, the ALJ noted the inconsistency in the diagnosis of depression and anxiety in Dr. Penepent's records. In one note, Dr. Penepent noted that Plaintiff was just released from "overnight psych admission" after police found Plaintiff living in "squaller." Tr. 309. However, given the requirement that the ALJ fully develop the record (even when counsel is lax in marshalling the evidence), the Court finds that the following records should be considered to ensure that Plaintiff has received a full and impartial hearing: (1) any physical therapy records for the period in question; (2) the report of the "state doctor" who examined Plaintiff in May 2014; (3) the records of Plaintiff's psychiatric observation that occurred in 2016; and (4) the MRI or MRIs referenced in the record. Counsel for Plaintiff is instructed to work with the ALJ to ensure these records are furnished within thirty (30) days of this opinion. After such records are before the ALJ, he is then free to determine whether his ultimate analysis stands.

The Court believes that Plaintiff likely did not receive the full representation at the hearing she deserved. However, this is not the fault of the ALJ. The ALJ pointed out the obvious deficiencies in the record. Because the Commissioner has the ultimate responsibility to ensure a complete record, however, the case is reluctantly remanded under these circumstances to obtain

the above-mentioned records to determine whether the ALJ's findings as to his RFC determination and/or the alleged impairment of depression should be modified. The Court has no opinion as to whether these additional records will have any impact on the Commissioner's ultimate determination.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 8) is **GRANTED IN PART**, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 11) is **DENIED**, and this matter is **REMANDED** to the Commissioner for further administrative proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g). *See Curry v. Apfel*, 209 F.3d 117, 124 (2d Cir. 2000). On remand, the ALJ is directed to exercise his duty to develop the record to ensure that it is complete, including working to obtain any missing records. Further, if the ALJ believes that additional testimony from any source is necessary, he may so elicit. Once the above-noted records are before the ALJ, the record will be deemed complete. However, as explained above, the ALJ need not recontact Dr. Penepent, as the Court finds that the ALJ thoroughly considered the opinions of Dr. Penepent, along with the medical evidence in the record, and appropriately determined said opinions were entitled to little weight.

**IT IS SO ORDERED**.

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE